1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DARLENE GUYETTE O/B/O
DIANNE M. GRIMES,

                                Plaintiff,

        v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                                Defendant.

Case No. 3:13-cv-05743-RBL-KLS

REPORT AND RECOMMENDATION

Noted for June 27, 2014.

        Plaintiff has brought this matter for judicial review of defendant's denial of her

applications for disability insurance and supplemental security income ("SSI") benefits.  This

matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §

636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v.

Weber, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the remaining record, the

undersigned submits the following Report and Recommendation for the Court's review,

recommending that for the reasons set forth below, defendant's decision to deny benefits should

be reversed and this matter should be remanded for further proceedings.

                        FACTUAL AND PROCEDURAL HISTORY

        On April 22, 2009, plaintiff, Diana Grimes, filed an application for disability insurance

benefits and supplemental security income benefits, alleging disability as of July 13, 2004, due to

bipolar disorder, anxiety disorder, rotator cuff injury, and whole body pain. See Administrative

Record ("AR") 177-83, 184-90, 219-27.  Both applications were denied upon initial

REPORT AND RECOMMENDATION - 1

administrative review and on reconsideration. <u>See</u> AR 88-91, 94-97.  Plaintiff died on March 17, 2011 of acute drug intoxication. <u>See</u> AR 1007.  A substitution of party was entered naming plaintiff's sister, Darlene Guyette, as next of kin.  <u>See</u> AR 145.  A hearing was held before an administrative law judge ("ALJ") on April 21, 2011, at which plaintiff's representative appeared, as did a vocational expert ("VE"). <u>See</u> AR 52-80.

On July 11, 2011, the ALJ issued a decision in which plaintiff was determined to be not disabled. <u>See</u> AR 23-51.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on July 9, 2013, making the ALJ's decision defendant's final decision. <u>See</u> AR 1-6; <u>see also</u> 20 C.F.R. § 404.981, § 416.1481. On September 3, 2013, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. <u>See</u> Dkt #3.  The administrative record was filed with the Court on November 21, 2013. <u>See</u> Dkt #14.  The parties have completed their briefing, and thus this matter is now ripe for judicial review and a decision by the Court.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for award of benefits, or in the alternative, for further proceedings, because the ALJ erred: (1) in evaluating plaintiff's drug and alcohol use; (2) in rejecting the lay witness evidence in the record; (3) in evaluating the medical evidence in the record; (4) in determining plaintiff's severe impairments; (5) in discounting plaintiff's credibility; and (6) in assessing plaintiff's residual functional capacity.  The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, recommends that while defendant's decision should be reversed, this matter should be remanded for further administrative proceedings.

<u>DISCUSSION</u>

The determination of the Commissioner of Social Security (the "Commissioner") that a

REPORT AND RECOMMENDATION - 2

claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [1]

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

REPORT AND RECOMMENDATION - 3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

I.      The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him

Sorenson, 514 F.2d at 1119 n.10.

or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

A.      Michael Brown, Ph.D. – Examining Physician

Dr. Brown examined plaintiff on behalf of the state Department of Social and Health Services four times prior to plaintiff's death. AR 448-30, 525-34, 536-42, 886-97.  Plaintiff raises issue with the ALJ's treatment of two of these evaluations.

Dr. Brown examined plaintiff on June 26, 2009 and opined plaintiff would have marked limitations in her ability to relate appropriately to co-workers and supervisors, interact appropriately in public contacts, and respond appropriately to and tolerate the pressure and expectations of a normal work setting.  AR 538.  The ALJ gave little weight to this portion of the doctor's opinion finding that it was based largely on subjective factors and that it was not

1   sufficiently supported by the medical evidence of record as a whole.  AR 42.  Plaintiff argues the

2   ALJ erred in evaluating this opinion by failing to articulate specific and legitimate reasons to

3   discredit Dr. Brown's opinions.  See Dkt. # 18, p. 10-15.  This Court agrees.

4          To support his conclusion, the ALJ noted that, while Dr. Brown found plaintiff to be

5   isolated, the record showed "claimant had friends and interacted regularly with family."  AR 42.

6   The ALJ did not cite to any part of the record to support this statement, but noted his prior

7   discussion of plaintiff's social function.  Id.  Earlier in his decision, the ALJ found plaintiff to be

8   moderately impaired in social functioning, noting that she lived with her significant other, got

9   along with her landlady, and had two friends visit her while admitted to the hospital.  See AR 30.

10  He also noted that during that hospital admission, she went on an outing to Wal-Mart.  Id.  This

11  does not constitute substantial evidence to support the ALJ's conclusion that plaintiff was not

12  isolated.

13

14         Plaintiff stated consistently throughout the record that she rarely left her home and

15  experienced anxiety when around people.  AR 228, 616-17, 665, 657, 669.  Further, her mental

16  health counseling notes rarely mentions her interacting with anyone other than her significant

17  other, with whom she lived.  AR 653, 655, 850, 853-55.  In regards to her family, the record

18  shows that she was not in contact with her mother and that her interactions with her sister were

19  generally at plaintiff's home.  AR 267, 658, 663.  Plaintiff's minimal social interactions and one

20  visit to Wal-Mart are not inconsistent with Dr. Brown's statement that plaintiff was isolated.

21

22         The ALJ also noted that while Dr. Brown found plaintiff's grooming to be marginal, "that

23  was not usually the case."  AR 42.  Again, the ALJ provided no support for this assertion, and

24  even if there was support, does not explain why that would be a reason to discred Dr. Brown's

25  opinion.

26

REPORT AND RECOMMENDATION - 6

In addition to stating the opinion was unsupported by the record, the ALJ also discredited Dr. Brown's opinion finding that it was based largely on subjective factors.  See AR 42.  While this may be a valid reason to discredit a medical opinion, it was not appropriate in this case.  See Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).  This evaluation was the third time Dr. Brown had performed a psychological examination on plaintiff, and Dr. Brown noted plaintiff looked "worse than at previous two meetings."  AR 538.  Further, Dr. Brown performed a mental status examination and memory testing on plaintiff, which, together with his clinical observations, was used to render his opinion.  Id.  Further, with respect to the need for psychological testing, the diagnoses and observations of psychiatrists and psychologists constitute competent evidence when mental illness is the basis of a disability claim:

> Courts have recognized that a psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as is a medical impairment and that consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine. In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices in order to obtain objective clinical manifestations of mental illness.... [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnoses and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic technique.

Sanchez v. Apfel, 85 F. Supp.2d 986, 992 (C.D. Cal. 2000)  (quoting Christensen v. Bowen, 633 F.Supp. 1214, 1220-21 (N.D.Cal.1986)) (emphasis added); see also Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987 (opinion that is based on clinical observations supporting diagnosis of depression is competent [psychiatric] evidence).  Here, Dr. Brown is a trained psychologist who performed testing and relied on this as well as his professional observations to come to his conclusions.  Thus, it was not appropriate to reject Dr. Brown's opinion finding that it wasn't supported by objective testing.  The ALJ erred in evaluating this opinion from Dr. Brown.

REPORT AND RECOMMENDATION - 7

1   Dr. Brown evaluated plaintiff again on April 23, 2010.  AR 886-897.  Dr. Brown

2   measured plaintiff's GAF score at 40 and found plaintiff to have marked limitations in her ability

3   to learn new tasks, interact appropriately in public contacts, and respond appropriately to and

4   tolerate the pressures and expectations of a normal work setting.  AR 889-90.  The ALJ gave this

5   opinion very little weight because he found the claimant's clean and sober date to be incorrect.

6   See AR 42.  The ALJ also noted that Dr. Brown had not reviewed any of plaintiff's records and

7   noted plaintiff was not consistently taking her medications.  Id.  Plaintiff argues these were not

8   specific and legitimate reasons to discredit the opinion.  Dkt. #19, p. 10-15.  This Court agrees.

9   While the ALJ found there to be an inconsistency regarding plaintiff's clean and sober

10  date, substantial evidence does not support this conclusion.  Plaintiff has a substantial history of

11  substance abuse, however the record shows she began outpatient treatment in January 2009 and

12  had clean drug urinalysis tests throughout her treatment, which ended in December 2009.  See

13  AR 731-765.  After being discharged from treatment, she continued counseling with Cascade

14  Mental Health, where records support her claims of sobriety up through the date of Dr. Brown's

15  evaluation.  See AR 652, 850-84.  In May 2010, plaintiff entered a relapse prevention program

16  through Cascade Mental Health in which her clean and sober date was listed as May 1, 2010.

17  AR 967.  It appears based on the record, and based on statements from plaintiff's attorney, that

18  plaintiff had a onetime relapse in May 2010.  See AR 78, 960.  While the ALJ notes the opinion

19  from Dr. Brown was completed May 13, 2010, it was actually done on April 23, 2010, and May

20  13, 2010 was merely the date it was received by the office of the Department of Social and

21  Health Services.  See AR 886.  As discussed above, as of April 23, 2010, plaintiff was reportedly

22  clean and sober, and had been for at least a year.  The ALJ's conclusion that Dr. Brown based his

23  opinion on incorrect information regarding plaintiff's substance abuse was not supported by

REPORT AND RECOMMENDATION - 8

1   substantial evidence.

2          The ALJ also discredited Dr. Brown's opinion because plaintiff was not compliant with

3   medications.  The ALJ did not point to any evidence in the record to support this conclusion, and

4   a review of the record actually supports the opposite conclusion.  Prior to Dr. Brown's opinion,

5   the record shows that plaintiff was mostly compliant with her medications and, at the time of Dr.

6   Brown's evaluation, she was prescribed Trazadone, Pristiq, and Abilify.  AR 655, 658, 667, 677,

7   850, 853, 856, 857, 864, 866.  The only mention of plaintiff not being compliant with her

8   medications prior to Dr. Brown's evaluation was when she stopped taking them for a short

9   period because she believed they caused her to develop a rash.  See AR 854-55.  She discussed

10  this with her medical provider and quickly began taking her medications again.  See AR 855.

11  Dr. Brown noted in his evaluation that plaintiff was "currently taking Trazadone, Pristiq and

12  Abilify."  AR 886.  This is completely consistent with the record, so it is unclear why the ALJ

13  felt Dr. Brown did not have a clear picture of plaintiff's medication compliance.  The ALJ's

14  conclusion is not supported by substantial evidence in the record.

15         Finally, the ALJ noted that Dr. Brown did not review any records prior to completing the

16  evaluation.  The ALJ assumed that, had Dr. Brown reviewed the record, he would have come to

17  different conclusions regarding plaintiff's substance abuse and medication compliance, which

18  would have altered his opinion.  See AR 42.  However, as discussed above, the ALJ's

19  conclusions in these areas were not supported by the record.  Further, although Dr. Brown did

20  not review any records, he did evaluate plaintiff on three occasions prior to performing this

21  evaluation, and he actually noted that plaintiff "appears more depressed now than when last

22  seen."  AR 418-30, 525-34, 536-42, 889.

23         The ALJ's failed to provide specific and legitimate reasons for discrediting both of Dr.

REPORT AND RECOMMENDATION - 9

Brown's opinions.  The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). The Ninth Circuit noted that "in each case we look at the record as a whole to determine [if] the error alters the outcome of the case." Id. The court also noted that the Ninth Circuit has "adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" Id. (quoting Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008)) (other citations omitted).  Had the ALJ given full weight to either of Dr. Brown's opinions, his disability determination would likely change, therefore his error was not harmless.

B.      Silverio Arenas, Jr., Ph.D. – Examining Physican

On August 12, 2009, plaintiff underwent a consultative evaluation with Dr. Silverio Arenas Jr.  AR 613-18.  Dr. Arenas diagnosed plaintiff with cognitive disorder NOS, Anxiety Disorder NOS, Depressive Disorder NOS, Learning Disorder NOS, rule out Borderline Intellectual Functioning, rule out personality disorder NOS, and mild mental retardation.  He measured plaintiff's GAF score at 45-50 and testing showed a severe level of depression and an extreme level of anxiety.  AR 816-17.  He also noted that, "[o]verall, the client's abilities to reason and understand, attend/concentrate, remember, pace, persist, and to tolerate/manage stress are all adequately functional relative to the presenting problems, within her present limited/curtailed and isolative interactive environment, but would be dysfunctional outside of that, as in any competitive work situation."  Id.

The ALJ gave this opinion "less weight" finding that it was based on "little other than the claimant's subjective symptoms."  AR 42.  While, as stated above, this may be a valid reason to

REPORT AND RECOMMENDATION - 10

discredit an opinion when plaintiff's credibility has been properly discredited, substantial

evidence does not support the assumption that this opinion was based only on claimant's

statements.  See Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).  Dr.

Arenas reviewed records, including evaluations from Dr. Brown and Dr. Sattar, prior to

rendering his decision.  See AR 613-14.  He also performed testing, including a Mental Status

Examination, the Burns Depression Checklist, and the Burns Anxiety Inventory.  AR 613.  It is

unclear what the ALJ felt Dr. Arenas could have done to further support his evaluation.

The Court notes that "experienced clinicians attend to detail and subtlety in behavior,

such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and

the unspoken message of conversation. The Mental Status Examination allows the organization,

completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker,

The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). "Like the physical

examination, the Mental Status Examination is termed the *objective* portion of the patient

evaluation." Id. at 4 (emphasis in original).

The Mental Status Examination generally is conducted by medical professionals skilled

and experienced in psychology and mental health. Although "anyone can have a conversation

with a patient, [] appropriate knowledge, vocabulary and skills can elevate the clinician's

'conversation' to a 'mental status examination.'" Trzepacz, supra, The Psychiatric Mental Status

Examination 3. A mental health professional is trained to observe patients for signs of their

mental health not rendered obvious by the patient's subjective reports, in part because the

patient's self-reported history is "biased by their understanding, experiences, intellect and

personality" (Id. at 4), and, in part, because it is not uncommon for a person suffering from a

mental illness to be unaware that her "condition reflects a potentially serious mental illness."

REPORT AND RECOMMENDATION - 11

Van Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (citation omitted).

When an ALJ seeks to discredit a medical opinion, he must explain why his own interpretations, rather than those of the doctors, are correct. Reddick, 157 F.3d at 725 (citing Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988)); see also Blankenship v. Bowen, 874 F.2d 1116, 1121 (6th Cir. 1989) ("When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professional trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation") (quoting Poulin v. Bowen, 817 F.2d 865, 873-74 (D.C. Cir. 1987) (quoting Lebus v. Harris, 526 F.Supp. 56, 60 (N.D. Cal. 1981))); Schmidt v. Sullivan, 914 F.2d 117, 118 (7th Cir. 1990) ("judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor. The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomena are often wrong") (internal citations omitted)).

The ALJ substituted his opinion for that of Dr. Arenas without giving adequate explanation. He failed to provide specific and legitimate reasons to discredit Dr. Arena's opinion, and had this opinion been accepted, the ultimate disability determination would likely change. Therefore, the ALJ's error was not harmless. See Molina, 674 F.3d at 1115.

II.    This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional

REPORT AND RECOMMENDATION - 12

investigation or explanation." <u>Benecke v. Barnhart</u>, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." <u>Id.</u>

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." <u>Smolen</u>, 80 F.3d at 1292; <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

<u>Smolen</u>, 80 F.3d 1273 at 1292; <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

Because issues still remain in regard to the medical opinion evidence from Dr. Brown and Dr. Arenas – including whether the ALJ would be required to adopt that evidence and what impact it would have on the ALJ's assessment of plaintiff's residual functional capacity and her ability to perform other work existing in significant numbers in the national economy – remand for further consideration of those issues is warranted.

<u>CONCLUSION</u>

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled.  Accordingly, the undersigned recommends as well that the Court reverse defendant's decision to deny benefits and remand this matter for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.")

REPORT AND RECOMMENDATION - 13

72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. <u>See</u> <u>also</u> Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **June 27, 2014**, as noted in the caption.

DATED this 4th day of June, 2014.


Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 14